**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SMOKEY DAVIDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-658-GKF-TLW |
| | ) | |
| (1) CITY OF OWASSO, | ) | |
| (2) JAROD MITCHELL, and | ) | |
| (3) BOBBY SORDO, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION AND ORDER</u>

This matter comes before the court on defendants' motion for summary judgment [Dkt. #31]. The court heard oral argument on the motion on February 11, 2015.

This case arises from a traffic stop, an arrest, and a subsequent criminal proceeding in Tulsa County District Court. On October 4, 2011, the Owasso Police Department received a tip from an employee at the Walmart in Owasso, Oklahoma, that three individuals appeared to be purchasing precursor products for the manufacture of methamphetamine. [Dkt. #31-2]. The tip described the individuals and the car they got into after completing their purchases. [*Id.*]. Two Owasso police officers, Officers Mitchell and Sordo, were nearby the Walmart and spotted a vehicle and three occupants all matching the description provided in the tip. [Dkt. #31-3]. Officer Sordo measured the vehicle's speed using a radar gun and determined that the vehicle was speeding. [*Id.*]. Officer Sordo communicated this information to Officer Mitchell, who was behind the vehicle and in a better position to initiate a traffic stop. [*Id.*]. Officer Mitchell did just that, and Officer Sordo pulled in behind him. [*Id.*]. Officer Sordo is a canine officer and his

drug dog Beny[1] was in his vehicle.  [*Id*.].  While Officer Mitchell checked the identification of the driver and passengers, Officer Sordo and Beny conducted a free air sniff around the exterior of the vehicle.  [*Id*.].  Beny alerted at both the driver and passenger doors, and the officers conducted a search of the vehicle.  [*Id*.].  The search revealed several items used in the manufacture of methamphetamine.  [*Id*.].  The officers arrested the driver, Smokey Davidson, plaintiff in the instant case.  [*Id*.].  Davidson was thereafter prosecuted in state court for endeavoring to manufacture methamphetamine and for speeding.  [Dkt. #31-11, p. 2].  During the criminal proceedings, Davidson filed a motion to suppress the evidence obtained during the search.  [Dkt. #31-13].  For reasons not made explicit in the record, the state court granted that motion to suppress.  [Dkt. #31-11, p. 8].  The state then dismissed both charges.  [*Id*.].

Davidson filed the current civil lawsuit against Officers Sordo and Mitchell and against the City of Owasso, claiming defendants violated his constitutional rights as a result of their stop, search, seizure, arrest and prosecution.  [Dkt. #4].  Defendants now seek summary judgment on plaintiff's claims for an unreasonable search under the Constitutions of the United States and Oklahoma, wrongful arrest and malicious prosecution, municipal liability, and punitive damages. [Dkt. #31].

**I.**  **Standard of Review**

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

---

[1] Beny's name is misspelled as "Veny" in the preliminary hearing transcript.

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998). A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## II.   The Stop and Search

Defendants seek summary judgment on Davidson's claims under the United States and Oklahoma Constitutions for unreasonable stop and search.[2] A stop is reasonable under the Fourth Amendment "where the police have probable cause to believe that a traffic violation has occurred." *United States v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)).

Davidson argues the stop was invalid because it was pretextual. Specifically, Davidson argues the officers were motivated by the tip from the Walmart employee, not by the alleged traffic violation. In making this argument, Davidson relies on case law that is no longer in force.

---

[2] Although the Oklahoma claim is legally separate from Davidson's claim under the United States Constitution, the parties agree that the relevant substantive elements track each other in this case. [*See* Dkt. # 31, p. 25; Dkt. #36, p. 25].

*See United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (overruling the ban on pretextual searches articulated in *United States v. Guzman*, 864 F.2d 1512 (10th Cir. 1988) and concluding, "[i]t is . . . irrelevant that the officer may have had other subjective motives for stopping the vehicle."); *see also United States v. Harmon*, 742 F.3d 451, 456 (10th Cir. 2014) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996) ("an officer's subjective motivation for the stop 'plays no role in ordinary [reasonable suspicion] Fourth Amendment analysis.'")). Here, Officer Sordo testified he observed Davidson traveling 43 mph in a 35 mph zone, as measured by the officer's radar gun. Officer Sordo therefore had reasonable suspicion that Davidson was speeding. The state dropped the speeding charge only after the state district court judge granted a motion to suppress that led the state to dismiss its primary charge of endeavoring to manufacture methamphetamine. The state's dismissal of the speeding charge three days later is not evidence that Officer Sordo lacked probable cause to believe Davidson was speeding.

Davidson's argument that the stop was pretextual relies on an incorrect statement of the law. Defendants are therefore entitled to summary judgment on Davidson's claims that the police lacked probable cause that a traffic violation had occurred.

Davidson also argues the subsequent search of the vehicle, based as it was on the drug dog alert, was improper. An alert by a trained narcotic detection dog provides probable cause to search a vehicle as long as the dog is reliable and trained. *United States v. Clarkson*, 551 F.3d 1196, 1202-03 (10th Cir. 2009) (citing authorities). Officer Sordo and Beny are certified and licensed. [Dkt. ##31-5, 31-6]. Beny is trained to alert on four controlled substances: marijuana, heroin, cocaine, and methamphetamine. [*Id*.]. Although no official statistics on Beny's reliability are before the court, Officer Sordo testified that Beny is approximately 94% accurate, which surpasses the state requirement of 67%.

Davidson challenges Beny's reliability in five respects. First, Davidson notes Officer Sordo and Beny's licensing lapsed for about ten days in July 2012. This lapse occurred nine months after Davidson's arrest and has no relevance to Beny's reliability in October of 2011. Also, Davidson offers no evidence that the lapse in certification resulted from matters concerning Beny's reliability.

Second, Davidson argues that Beny is trained to hit on "anything," not limited to the four controlled substances for which Beny is licensed. Davidson bases this argument on a portion of Officer Sordo's testimony at the preliminary hearing in the state court criminal action against Davidson. Officer Sordo was asked to describe the free air sniff of the area around Davidson's vehicle, and responded: "Basically I allowed the dog to run around the vehicle and give me any kind of alert that there may be any kind of illegal contraband or drugs or anything inside the vehicle." [Dkt. #36-2, p. 29:11-14]. Davidson's counsel seizes on the word "anything" and argues Sordo testified Beny is trained to hit on, literally, anything, including noncontraband items. Davidson's interpretation is not persuasive. Officer Sordo's casual use of the phrase "or anything" does not constitute evidence that Beny was trained to alert on anything other than the four controlled substances he is licensed to identify. [*See* Dkt. #31-6].

The third and fourth arguments relate to whether Beny is trained to alert on ephedrine or pseudoephedrine in addition to the four narcotic substances listed on his licensing documents. As noted above, Officers Mitchell and Sordo found three empty pseudoephedrine boxes in Davidson's car, but no methamphetamine. Ephedrine, or the chemically similar pseudoephedrine, is a principal ingredient in cold medications, like Sudafed. It can be reduced chemically to methamphetamine, and is a principal ingredient in the manufacture of

methamphetamine. Thus, these two arguments relate to whether Beny is trained to alert to the scent of ephedrine, separate and apart from the scent of methamphetamine.

Davidson's argument on this point shifted between briefing on the motion and argument at the hearing. The two arguments rely on contradictory factual premises. In his response to defendants' motion to dismiss, Davidson argues Beny's alert was unreliable, and thus an inadequate basis for probable cause, because Beny was *not* trained to detect ephedrine, as opposed to methamphetamine itself. Davidson noted that this issue was left undecided by the Tenth Circuit in *United States v. Patten*, 183 F.3d 1190, 1195 (10th Cir. 1999). In that case a drug dog alerted to a suitcase that was subsequently found to contain ephedrine, but not methamphetamine. *Id*. The court noted the "problem," as identified by the criminal defendant in that case, "that the canine had never been trained to alert on ephedrine" as opposed to methamphetamine. *Id*. The Tenth Circuit found other grounds for probable cause aside from the canine alert, and did not reach the issue of whether the dog was trained to alert to ephedrine. *Id*. The Supreme Court considered a similar situation in *Florida v. Harris*, 133 S.Ct. 1050, 1054 (2013). There a search premised on an alert from a drug dog "did not turn up any of the drugs [the dog] was trained to detect[,]" but did reveal 200 loose pseudoephedrine pills. *Id*. The Court hypothesized the dog may have alerted to methamphetamine odors previously transferred from the driver to the car. *Id*. at 1059.

In reply, counsel for defendants argued that "Beny's ability to identify methamphetamine includes identifying trace scent amounts of pseudoephedrine . . . to include the level of scent still present in empty boxes of pseudoephedrine." [Dkt. #37, p. 7]. Thus, in the briefing, Davidson's counsel argued Beny is not trained to detect ephedrine, and defendants' counsel replied that the dog is so trained.

The arguments shifted when, at the hearing, the court expressed concern at the prospect of a drug dog trained to alert to ephedrine separate and apart from methamphetamine, as this would lead to an alert whenever a car merely contains cold medicine. Such overbreadth would dilute the correlation between the alert and evidence of criminal activity and thus undermine probable cause based on the alert.

In the argument that followed, the parties quickly swapped positions regarding Beny's training. Defendants' counsel recognized that his statement in the reply brief—that Beny was trained to alert to trace scent amounts of pseudoephedrine—was an overstep, and that Beny was trained to detect only the four controlled substances on his license. Davidson's counsel, on the other hand, argued Officer Sordo had testified Beny was trained to hit on pseudoephedrine, and a drug dog search that identifies "noncontraband items that otherwise would remain hidden from public view" is constitutionally improper. *See United States v. Place*, 462 U.S. 705, 707 (1983).

Although the parties' shifting positions have muddied the waters a bit, the material facts before the court are uncontested. There is no genuine issue of material fact regarding whether Beny was trained to alert to the mere scent of ephedrine or pseudoephedrine. He was not. Beny was trained and certified to alert to the odors of four controlled substances: methamphetamine, heroin, cocaine, and marijuana. [Dkt. #31-6]. Officer Sordo's testimony was not an admission that Beny is *trained* to alert to ephedrine. Officer Sordo was asked to explain Beny's alert on Davidson's car given that no narcotics were found in the car. [Dkt. #31-4, p. 17-18 (internal p. 36-37)]. Officer Sordo speculated Beny may have hit on the scent of pseudoephedrine in the empty boxes found in the car. [*Id*.].

Obviously, drug dogs cannot explain the specific scent that led them to alert. In attempting to explain what seems to be a false positive, one might guess, as Officer Sordo did,

the dog alerted to a scent closely similar to those he is trained to detect. Or one could hypothesize that there was no false positive, and that the dog in fact alerted to traces of a controlled substance no longer in the vehicle. *See, e.g.*, *Harris*, 133 S.Ct. at 1059. All such attempts are inherently speculative. For this reason, when determining whether a drug dog's alert is sufficiently reliable to provide probable cause for a search, courts often consider the dog's performance over time, and in particular the dog's performance in controlled training environments, rather than the details of a specific alert in the field. *See Harris*, 133 S.Ct. at 1056-57. As noted above, Beny and Officer Sordo were properly certified and licensed at the time of the sniff test, and Officer Sordo testified that Beny is approximately 94% accurate. Davidson has not presented evidence casting any genuine doubt on Beny's performance over time.

Finally, Davidson argues Beny has a variety of alerts, and that this constitutes a "loose and uncertain alert 'system'" calling into question Beny's reliability. [Dkt. #36, p. 17 (internal p. 13)]. This argument is unpersuasive. There is no evidence before the court that Beny's various alerts are somehow ambiguous to his handler, Officer Sordo.

This court finds that no genuine issues exist as to Beny and Officer Sordo's reliability as a drug detection unit. Beny's alert therefore supplied probable cause justifying the search of Davidson's car. Defendants are entitled to summary judgment on Davidson's constitutional claims arising from the vehicle search.

## III.    <u>Wrongful Arrest</u>

Davidson contends the officers lacked probable cause to arrest him. "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of

reasonable caution in the belief that an offense has been or is being committed." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004).

Davidson's arrest was based on the items found in his vehicle during the search. The officers found, among other items, a can of compressed air, coffee filters, plastic tubing, lithium batteries, a box of cold packs, a digital scale, drain cleaner, a bag of charcoal, and three empty boxes of cold medicine containing pseudoephedrine. [Dkt. #31-7; Dkt. #31-8]. The arresting officers determined these items were products used in the manufacture of methamphetamine. [Dkt. #31-7]. The officers also found several other grocery items unrelated to the manufacture of methamphetamine. After presenting this evidence to the state court in the preliminary hearing, that court concluded the state had probable cause to believe Davidson had committed the offense of endeavoring to manufacture methamphetamine.[3] [Dkt. #31-4, p. 22 (internal p. 60)].

In arguing lack of probable cause for the arrest, Davidson emphasizes that the search produced no methamphetamine, pseudoephedrine (merely empty boxes), or solvent or containers needed to manufacture methamphetamine. Davidson also argues the officers did not note any outstanding warrant for Davidson's arrest or any criminal history.

Evidence the officers did *not* find does not erase what they *did* find. The specific combination of products identified by the officers as related to the manufacture of methamphetamine, including three empty boxes of pseudoephedrine, would warrant an officer of reasonable caution to believe that Davidson and his companions were committing the offense of

---

[3] The officers also found two receipts from a Walgreens pharmacy documenting the purchase of two of the three boxes of pseudoephedrine. [Dkt. #31-10]. Because those two receipts were not included or referenced in the probable cause affidavit, the court ignores them for purposes of assessing probable cause here. *See Wilkins v. DeReyes*, 528 F.3d 790, 802 (10th Cir. 2008) (quoting *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971) (an "otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate . . . .").

endeavoring to manufacture methamphetamine. Defendants are entitled to summary judgment on Davidson's wrongful arrest claim.

## IV. <u>Malicious Prosecution</u>

Defendants also seek summary judgment on Davidson's claim for malicious prosecution. The elements of malicious prosecution are: "(1) the bringing of the original action by the defendant; (2) its successful termination in favor of plaintiff; (3) want of probable cause to bring the action; (4) malice; and (5) damages." *Parker v. City of Midwest City*, 850 P.2d 1065, 1067 (Okla. 1993). In assessing a claim for malicious prosecution, the "'ultimate question' is the existence of a constitutional violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1288 (10th Cir. 2004).

Defendants' participation in the prosecution of the criminal action satisfies the first element. The second element is satisfied because the state dropped the charges against Davidson.

To show *both* malice *and* lack of probable cause, Davidson argues the officers recklessly or intentionally made false statements in the probable cause affidavit. Specifically, Davidson argues the officers stated they found pseudoephedrine, as opposed to empty pseudoephedrine boxes, in Davidson's car. Davidson identifies two instances in which the officers' documentation refers to the empty boxes simply as "pseudoephedrine." [*See*, Dkt. #31-8, p. 2; Dkt. #31-12, p. 1]. However, other, more specific statements by the officers clarified that the boxes were empty. As defendants note in reply, Officer Wells, who participated in the search, clearly stated in his supplemental report that the boxes were empty. [Dkt. #31-7, p. 1]. In addition, Officer Sordo testified the boxes were empty at the preliminary hearing. [Dkt. #37-2, pp. 2-4 (internal pp. 54-56)]. Because the officers clearly reported the boxes were empty, Davidson cannot show the officers acted with malice.

Furthermore, as the court rejects Davidson's other arguments for lack of probable cause, *see supra*, Davidson cannot show there was no probable cause to bring the criminal action.

The state court special judge who conducted the preliminary hearing reached the same conclusion. [Dkt. #31-4, p. 22]. She concluded "the State has met its burden to show probable cause that the listed offense of endeavoring to manufacture a controlled drug was met and probable cause to believe that the Defendant named herein [Davidson] did commit said offense." [*Id*.] Special Judge Leitch's conclusion is fatal to Davidson's malicious prosecution claim. *See Smith v. Barber*, 316 F.Supp.2d 992, 1026 (D.Kan. 2004) (a "law enforcement officer cannot be held liable for malicious prosecution based upon an alleged wrongful arrest if there has been an independent hearing before a judge who determined that the evidence was sufficient to detain a suspect.") (citing *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996)). Like the hearing in *Taylor*, the preliminary hearing was an adversarial proceeding. *See Taylor*, 82 F.3d at 1564. Thus, Judge Leitch's ruling breaks "the chain of causation" between an alleged wrongful arrest and eventual prosecution. *See Smith*, 316 F.Supp.2d at 1026; *Taylor*, 82 F.3d at 1564.

Accordingly, defendants are entitled to summary judgment on Davidson's claim for malicious prosecution.

## V.   Remaining Claims

Because Officers Sordo and Mitchell did not violate Davidson's federally protected rights, no liability can be imputed to the City of Owasso. Defendant City of Owasso is entitled to summary judgment on Davidson's claim for municipal liability.

The parties agree that Davidson may not seek punitive damages against defendant City of Owasso, and the court granted summary judgment on that claim at the hearing.

In his Amended Complaint, Davidson sought punitive damages against all defendants. Because the court grants defendants summary judgment on plaintiff's underlying claims,

defendants Mitchell and Sordo are also entitled to summary judgment on Davidson's claim for punitive damages.

Similarly, because Officers Sordo and Mitchell did not violate Davidson's constitutional rights, the court need not address their qualified immunity defenses.

**VI.**     <u>**Conclusion**</u>

WHEREFORE, the defendants' Motion for Summary Judgment [Dkt. #31] is granted.

DATED this 26th day of February, 2015.


GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT